## LIST OF EXHIBITS

**A.** Full contract governing dispute between parties: Citibank Card Agreement 2010

**B.** Letter from Plaintiff to Defendants with JAMS filing, requesting they advance JAMS fees.

**C.** E-mail from JAMS case manager Cindy Cravalho confirming payment of claimant's (Plaintiff's) case management fee, and stating that the arbitration cannot proceed without respondent's (Defendant's) case management fee

**D.** More recent e-mail from JAMS case manager Cindy Cravalho again stating that the arbitration cannot proceed without respondent's (Defendant's) case management fee.

# Exhibit A

8049170CC

# CARD AGREEMENT

This Card Agreement is your contract with us. It governs the use of your card and account. The pricing information table is part of this Agreement. Please read this Agreement, including the pricing information table, carefully. Keep them for your records.

## Definitions

***account*** means the relationship established between you and us by this Agreement.

***APR*** means an annual percentage rate.

***authorized user*** means any person you allow to use your account.

***card*** means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

***we, us,* and *our*** mean Citibank (South Dakota), N.A., the issuer of your account.

***you, your,* and *yours*** mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Credit Limit.** The full amount of your credit limit is available to use where the card is honored. Part of your credit limit is called the cash advance limit. It is available for cash advances. We may reduce or increase your credit limit or cash advance limit at any time for any reason as permitted by law. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit limit. However, if the total balance goes over your credit limit you still must pay us. If your account has a credit balance, we may reduce the credit



balance by any new charges on your account. You may not maintain a credit balance in excess of your credit limit.

**Balance Transfers.** Balance transfers are an account feature that we make available to you through offers. If there is an offer available at account opening, the Citi Disclosures will describe the terms of that offer. If we make an offer after your account is opened, the offer will describe the terms. All balance transfers are subject to the standard purchase APR unless a promotional rate applies.

**Checks.** We may provide you with balance transfer checks. You may use them to transfer a balance to your account or make other transactions. We may also provide you with cash convenience checks. You may use them to get a cash advance. Use of a cash convenience check will be a cash advance even if you use the check to make a payment to another creditor. You may not use balance transfer checks or cash convenience checks to pay an amount owed to us under this Agreement or to pay another account with us or an affiliate. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Statement Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing period. We add any purchases, balance transfers or cash advances. We subtract any credits or payments. We then add any interest charges or fees and make other adjustments.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible or start collection proceedings; but we may continue to add interest and fees as permitted by law.

## APRs

**Account APRs.** For the APRs on your account, see the pricing information table.

**Variable APRs Based on Prime.** If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount. The additional amount appears on the Fact Sheet in the Details About Your Interest Rate table. If the Prime Rate increases, it will cause the APR to increase. If the Prime Rate decreases, it will cause the APR to decrease. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days before the Statement Closing Date. If the Prime Rate causes an APR to change, we put the new APR into effect as of the first day of the billing period for which we calculate the APR. We apply the new APR to any existing balances, subject to



any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**Penalty APR.** The Penalty APR may be applied to your account if you:

- make a late payment or
- make a payment that is returned.

We set your Penalty APR based on your creditworthiness.

If the Penalty APR is applied to your account because you make a late payment that is not more than 60 days late or make a payment that is returned, it will apply only to new transactions and may continue to apply indefinitely. However, if the Penalty APR is applied to your account because your payment is more than 60 days late, the Penalty APR will apply to both existing and new transactions. It will no longer apply to existing transactions if you make the next six consecutive minimum payments when due. If you do not make these six consecutive minimum payments, the Penalty APR may continue to apply to both new and existing balances indefinitely.

**Effect of APR Increases.** If an APR increases, interest charges increase. Your minimum payment may increase as well.

## Interest Charges Based on APRs

**Interest Charges.** We impose interest charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. To get a daily periodic rate, we divide the APR by 365.

**When Interest Charges Begin.** We begin to impose interest charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases, balance transfers, and cash advances. They also include interest charges and fees. We continue to impose interest charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid interest charges on purchases, but not on balance transfers and cash advances. This is called a grace period on purchases. The grace period is at least 23 days. To get a grace period on purchases, you must pay the New Balance in full by the due date every billing period. If you do not, you will not get a grace period until you pay the New Balance in full for two billing periods in a row. Certain balance transfer offers may take away the grace period on purchases. If that is the case, the balance transfer offer will describe what happens.

**Calculation of Interest Charges—Daily Balance Method (Including Current Transactions).** We calculate interest charges each billing period. To do this:

- We start with each of your different balances. These balances include, for example, standard purchases, standard cash advances, and different promotional balances. (When we calculate interest charges, we treat balance transfers as standard purchases unless a promotional rate applies.)
- We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any interest charge on the previous day's balance. (This results in daily compounding of interest charges.) We add any new charges. We then subtract any new credits or payments.
- We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing period. This gives us the daily interest charges for each of your different balances.
- We add up all the daily interest charges. The sum is the total interest charge for the billing period.

When we calculate daily balances, we add a purchase as of the Sale Date on the billing statement. We add a balance transfer or cash advance as of the Post Date on the billing statement. (The Post Date is the date we get a request to complete a balance transfer or cash advance transaction. When you send a balance transfer or cash convenience check directly to someone, the Post Date is the date we receive the check for payment.) We add a transaction fee to the same balance as the transaction. We generally add other fees to the standard purchase balance. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Balance Subject to Interest Rate.** Your statement shows a Balance Subject to Interest Rate. It shows this for each different balance. The Balance Subject to Interest Rate is the average of the daily balances during the billing period. A billing period begins on the day after the Statement Closing Date of the previous billing period. It includes the Statement Closing Date of the current billing period.

## Fees

**Annual Membership Fee.** If an annual membership fee applies, the pricing information table shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the statement on which the fee appears. The fee is otherwise non-refundable.



**Transaction Fee for Balance Transfers.** The pricing information table shows the amount of this fee. We add this fee for each balance transfer. This fee is in addition to any periodic fee that may be imposed with a promotional offer. You make a balance transfer when you use a balance transfer check or contact us to transfer a balance.

**Transaction Fee for Cash Advances.** The pricing information table shows the amount of this fee. We add this fee for each cash advance. You take a cash advance if you use a cash convenience check; get money through an automated teller machine (ATM); or get money through home banking or a financial institution. You also take a cash advance if you make a wire transfer; buy a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction.

**Transaction Fee for Foreign Purchases.** The pricing information table shows the amount of this fee, which is a percentage of the U.S. dollar amount of the purchase. We add this fee for each purchase made outside the U.S., whether made in U.S. dollars or in a foreign currency.

**Late Fee.** We may add a late fee for each billing period in which you have a past due payment. For late fee purposes, you have a past due payment any time you fail to pay the Minimum Payment Due (less the Amount Over Credit Limit shown on your billing statement) by the payment due date. The fee is based on your account balance as of the payment due date. The fee will be $15 on balances up to $100; or $25 on balances of $100 and over. However, for any additional past due payment during the next six billing periods after a past due payment, the fee will be $15 on balances up to $100; $29 on balances of $100 up to $250; or $35 on balances of $250 and over. The fee will not exceed the amount permitted by law.

**Returned Payment Fee.** We may add a returned payment fee for a returned payment. A returned payment is an electronic debit, payment check, or similar payment instrument, that is returned unpaid. We may add this fee the first time your payment is returned, even if it is not returned upon resubmission. The fee will be $25; or $35 for any additional returned payment during the next six billing periods after a returned payment. However, the fee will not exceed the amount permitted by law.

**Stop Payment on Cash Convenience Check Fee.** We add a $39 fee if we honor your request to stop payment on a cash convenience check. To stop payment on a cash convenience check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117. You can also call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order is good for 6 months unless renewed in writing.



## Information on Foreign Currency Conversion

Our network providers are MasterCard, Visa, and American Express. They convert transactions in foreign currencies into U.S. dollars. The type of card you have determines who does the conversion. Each network provider follows its own procedures. Each network provider's current procedures are described below. The procedures may change from time to time without notice.

- MasterCard uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate.
- Visa uses a conversion rate in effect on its applicable central processing date. It uses a government-mandated rate if required to do so. If not, it selects from the range of rates available in wholesale currency markets. The selected rate may vary from the rate Visa receives.
- American Express uses any conversion rate required by applicable law. If there is none, it uses the highest interbank rate it selects on the business day before the day it processes the transaction.

A third party may convert a transaction into U.S. dollars or another currency before sending it to our network provider. In these cases, the third party selects the conversion rate.

If you take a cash advance in a foreign currency at a branch or ATM of one of our affiliates, an affiliate of ours will convert it into U.S. dollars. This applies regardless of which network provider's card you use to take the cash advance. Our affiliate currently uses a conversion rate in effect on its processing date. It uses a government-mandated rate if required to do so. If not, it uses a mid-point market rate. Our affiliate's procedure may change from time to time without notice.

The conversion rate you get is the one used on the transaction's processing date. This may be different from the one in effect on the transaction's Sale Date or Post Date.

## Payments

**Minimum Payment Due.** You must pay at least the Minimum Payment Due by the payment due date each billing period. The sooner you pay the New Balance, the less you will pay in interest charges.

To calculate the Minimum Payment Due, we begin with any past due amount. We then add any amount in excess of your credit limit. We also add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;



**Exhibit A: page 2 of 6**

- 1% of the New Balance (the result is rounded down to the nearest dollar) plus the amount of your billed interest charges, any applicable late fee, and any applicable minimum interest charge; or
- 1.5% of the New Balance (the result is rounded down to the nearest dollar).

When we calculate the Minimum Payment Due, we may subtract from the New Balance certain fees added to your account during the billing period. We may also include in the Minimum Payment Due any additional amount specified in a promotional offer. The balance of any such promotional offer is not included in the four bullets above. The Minimum Payment Due is never more than the New Balance.

**Application of Payments.** Payments in excess of the Minimum Payment Due are applied in accordance with law. This means that we will generally apply payments in excess of the Minimum Payment Due to balances with higher APRs before balances with lower APRs. We generally apply payments equal to or less than the Minimum Payment Due and credits to lower APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or electronic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. You agree to pay us the Pay by Phone fee shown in the Pay by Phone section on the back of the billing statement when a representative of ours helps expedite your payment. Our representatives are trained to tell you this amount when you use this service.

## Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.



If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

## Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

## Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.**

## Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by electronic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and, to the extent permitted by law, demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.



**Lost or Stolen Cards, Account Numbers, or Cash Convenience and Balance Transfer Checks.** You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

**Closing Secured Accounts.** If your account is a secured account, you gave us a security interest in a Certificate of Deposit. This secures repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your account.

## ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what



Exhibit A: page 3 of 6

remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

## *How Arbitration Works*

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration



firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
800-778-7879 (toll-free)
Website: www.adr.org

JAMS
800-352-5267 (toll-free)
Website: www.jamsadr.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the



rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### *Survival and Severability of Terms*

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Governing Law and Enforcing our Rights

**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information

Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117



**Your Billing Rights: Keep this Document for Future Use**

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

**When we receive your letter, we must do two things:**

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.



**After we finish our investigation, one of two things will happen:**

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for

billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

© 2010 Citibank (South Dakota), N.A.

**Exhibit B**

Adi Fairbank
5023 SE Kelly St
Portland, OR 97206

Smith & Greaves, LLP / Citibank
621 SW Morrison, Suite 700
Portland, OR 97205

May 31, 2011

Re: Citibank v. Adi Fairbank / Case No. 1104-05527, and DEMAND for ARBITRATION

Dear Citibank / Smith & Greaves, LLP,

Thank you for your letter dated May 18, 2011. I am glad you are agreeable to proceeding with arbitration. As you see in the enclosed card agreement (p. 10-11), the party initiating the arbitration chooses the arbitration firm. Since you requested that I initiate, I obliged, and have chosen the JAMS arbitration firm.

Enclosed please find the JAMS demand for arbitration, as well as the motion to dismiss your complaint in Multnomah County Circuit Court. Furthermore, I formally request that you advance my JAMS arbitration fees per your card agreement, page 12.

I look forward to working out our dispute in arbitration.

Sincerely,

s/

Adi Fairbank

# Exhibit C

From: Cravalho Cindy <CCravalho@JAMSADR.com>
Subject: **RE: CIT03842 FAIRBANK/Citibank (South Dakota), N.A. v. Adi Fairbank/Multco. Case No. 110405527**
Date: October 26, 2011 8:15:12 AM PDT
To: "James A. Underwood" <junderwood@smithcreditlaw.com>, "GenevaOday@adr.org" <GenevaOday@adr.org>
Cc: "rikki.golden@citi.com" <rikki.golden@citi.com>, "adi@peacearms.org" <adi@peacearms.org>, Anna Todd <atodd@smithcreditlaw.com>, David Twigg <dtwigg@smithcreditlaw.com>

To all:

This will confirm JAMS received Ms. Fairbank's initial Case Management Fee of $250 on October 14, 2011. However, as we have not received Citibank's Case Management Fee, we are still unable to commence the arbitration and proceed with administration of this matter.

Thank you,

**Cindy L. Cravalho**
ADR Specialist
JAMS, *The Resolution Experts*
925.975.5738 (Direct Dial)
925.938.6732 (Facsimile)

---

**From:** James A. Underwood [mailto:junderwood@smithcreditlaw.com]
**Sent:** Monday, October 24, 2011 4:52 PM
**To:** GenevaOday@adr.org; James A. Underwood
**Cc:** rikki.golden@citi.com; adi@peacearms.org; Cravalho Cindy; Anna Todd; David Twigg
**Subject:** FW: CIT03842 FAIRBANK/Citibank (South Dakota), N.A. v. Adi Fairbank/Multco. Case No. 110405527

Dear Ms. O'Day, et. al.:

Our response regarding Ms. Fairbank's jurisdictional issue was sent to AAA on October 4, 2011. I am forwarding those same additional documents at this time to all parties. Ms. Fairbank was sent original documents regarding the same on September 22, 2011. Please confirm your receipt.

Our office has also not received confirmation from JAMS regarding its position at this time, or its receipt of Ms. Fairbank's purported fee. Ms. Cravalho, please respond to that issue.

Please clarify AAA's request for the "answer to demand" if these documents are not responsive thereto.

Our office will be providing AAA its preliminary hearing calendar by its deadline of tomorrow. I have been out of the office most of last week until today. We will also be promptly submitting your requested "Checklist for Conflicts". Is there a form we need to complete for that purpose?

Regards,

Jim Underwood

---

Dear Parties:

This will confirm receipt of Ms. Fairbank's letter regarding AAA jurisdiction.

At this time we ask Citibank for their comments to same.

This will also confirm we have not received an "answer to the demand" from Citibank only response to Ms. Fairbank's letters reganinding jurisdiction.

We have not received either parties' Checklist for Conflicts at this time either.

If you have any questions please let me know.

Ms. Fairbank, please note the Claimant has met the minimum filing requirements at this time, it will now be up to an arbitrator appointed in this case or the courts should the parties elect to have the courts deal with jurisidiction as to whether this matter will proceed.

Thank you. Geneva

---

**From:** E. Suzanne Izer
**Sent:** Tuesday, October 04, 2011 9:57 AM
**To:** GenevaOday@adr.org
**Cc:** James A. Underwood; rikki.golden@citi.com; adi@peacearms.org; ccravalho@jamsadr.com
**Subject:** CIT03842 FAIRBANK/Citibank (South Dakota), N.A. v. Adi Fairbank/Multco. Case No. 110405527

Ms. O'Day,

Please find attached letter from James Underwood in response to your October 4, 2011 email, as well as recent correspondence from our office with Ms. Fairbank.

If you have any questions or concerns, please do not hesitate to contact our office.

Thank you,

Suzanne Izer
**Legal Assistant**
Nancy A. Smith & Associates
Attorneys at Law
621 SW Morrison Street, Suite 700
Portland, OR 97205
sizer@smithcreditlaw.com
Phone: 503-227-2518
Fax: 503-242-9001

This e-mail message and the document attached to it, if any, are intended only for the use of the addressee and, may contain information that is PRIVILEGED and CONFIDENTIAL, and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is stricly prohibited. If you have received this communication in error, please delete all electronic copies of the message and its attachments, destroy any hard copies that you may have created, and reply to the sender advising of the transmission error.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

# Exhibit D

**From:** Cravalho Cindy <CCravalho@JAMSADR.com>
**Subject:** **RE: Update on JAMS case**
**Date:** February 17, 2012 3:53:45 PM PST
**To:** Adi Fairbank <adi@peacearms.org>
**Cc:** Deizha Arellano <ArellanoD@adr.org>, "James A. Underwood" <junderwood@smithcreditlaw.com>

We are missing the Case Management Fee from Respondent.

Cindy L. Cravalho
ADR Specialist
JAMS, The Resolution Experts
925.975.5738 (Direct Dial)
925.938.6732 (Facsimile)

-----Original Message-----
From: Adi Fairbank [mailto:adi@peacearms.org]
Sent: Friday, February 17, 2012 3:46 PM
To: Cravalho Cindy
Cc: Deizha Arellano; James A. Underwood
Subject: Re: Update on JAMS case

Yes, I understand the commencement requirements have not been met. Could you clarify what those missing requirements are?

As I understand it, the respondent's case management fee is the only missing requirement. That would be remedied by the Federal suit I mentioned in my last e-mail.

Thank you,
Adi Fairbank

On Feb 17, 2012, at 3:12 PM, Cravalho Cindy wrote:

> This case is inactive as the requirements to commence the matter have not been met.
>
> Cindy L. Cravalho
> ADR Specialist
> JAMS, The Resolution Experts
> 925.975.5738 (Direct Dial)
> 925.938.6732 (Facsimile)
>
> -----Original Message-----
> From: Adi Fairbank [mailto:adi@peacearms.org]
> Sent: Wednesday, February 15, 2012 12:32 PM
> To: Cravalho Cindy
> Cc: Deizha Arellano; James A. Underwood
> Subject: Update on JAMS case
>
> Dear Cindy Cravalho,
>
> I am writing to update you on events surrounding JAMS arbitration case # 1120010227. The respondent in this case, Citibank and Nancy A. Smith + Associates, continues to argue that AAA has jurisdiction in this case. I disagree.
>
> I wanted to update you on my plans, and to inquire as to the state of the JAMS file. It is still open, and waiting for respondent's case management fee, correct?
>
> My next action will be to file suit against Citibank and Nancy A. Smith + Associates in Federal District Court, asking that they be compelled to arbitrate in JAMS, pursuant to the FAA and their own arbitration agreement. At the same time, I will demand that AAA stay their arbitration proceeding, pending the outcome of the Federal suit.
>
> I have copied the relevant parties to the dispute. Mr. Underwood, you should expect to be served in the Federal lawsuit within the next week or two. Ms. Arellano, you will get a demand to stay the AAA case pending a decision by a Federal judge on my complaint.
>
> Thank you for your time,
>
> Adi Fairbank